**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| CYNTHIA PHILLIPS and CLIFTON PHILLIPS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| MEDTRONIC, INC. and THE BRIGHAM AND WOMEN'S HOSPITAL, INC., | ) ) ) | |
| Defendants | ) ) ) | |

**NOTICE OF REMOVAL**

TO:      PLAINTIFFS CYNTHIA PHILLIPS AND CLIFTON PHILLIPS
          DEFENDANT BRIGHAM AND WOMEN'S HOSPITAL, INC.

AND TO:     THE CLERK OF THE COURT

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendant Medtronic, Inc. ("Medtronic") hereby removes this case from the Suffolk County Superior Court of the Commonwealth of Massachusetts ("Suffolk Superior Court") to the United States District Court for the District of Massachusetts.  The basis for removal is as follows:

1.      On December 14, 2009, Plaintiffs filed a lawsuit in the Suffolk Superior Court, captioned *Cynthia Phillips and Clifton Phillips v. Medtronic, Inc., and The Brigham and Women's Hospital, Inc.*, Civil Action No. 09-5286 (the "State Court Action").  The State Court Action is a medical device products liability lawsuit involving a Synchromed Model 8637-40 implantable drug infusion pump (the "Subject Pump").  The Complaint makes claims for negligence and breach of warranty (Count I), loss of consortium (Count II), and violation of Chapter 93A (Count III) against Medtronic.  The Complaint asserts the same three counts against

The Brigham and Women's Hospital, Inc., the facility at which the Subject Pump was implanted into the Plaintiff and where the Plaintiff was treated for injuries she alleges resulted from the Subject Pump.  Medtronic denies all of these allegations.

2.      On February 2, 2010, Medtronic was served, through its registered agent, with the Summons and Complaint in the State Court Action.  Medtronic submits herewith all process, pleadings, motions, or orders it has received in the State Court Action, collectively as Exhibit A.

3.      This Notice of Removal is being timely filed within thirty days of the date on which Medtronic was served with the Summons and Complaint.  *See* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a).

4.      Removal is proper because this Court has original jurisdiction over this action based on: (a) diversity of citizenship pursuant to 28 U.S.C. § 1332; and (b) federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Each basis for jurisdiction is discussed below.

**Diversity Jurisdiction and Fraudulent Joinder**

5.      Removal cannot be defeated based upon the fraudulent joinder of a non-diverse defendant.  *Coughlin v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 626, 628 (D. Mass. 1991). "'Fraudulent joinder is a term of art used to describe not only the deceptive practice of joining a resident defendant solely to defeat diversity, but also an improper joinder' and does not necessarily mean that the plaintiff has acted out of a desire to mislead or deceive."  *Carey v. Board of Governors of Kernwood Country Club*, 337 F. Supp. 2d 339, 342 & n.1 (D. Mass. 2004) (citation omitted).  "'Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court.'"  *Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424-25 (5th Cir. 2008) *quoting Wecker v. Nat'l Enamel & Stamping Co.*, 204 U.S. 176, 186 (1907).

2

6.     Plaintiffs are both citizens and residents of the Commonwealth of Massachusetts. *See* Compl. Count I ¶ 1, Count II ¶ 1.

7.     Defendant Medtronic was incorporated under the laws of the State of Minnesota and has its principal place of business in Minnesota. *See id*. Count I ¶ 2. It is, therefore, a citizen of the State of Minnesota. 28 U.S.C. § 1332(c)(1).

8.     Defendant The Brigham and Women's Hospital, Inc. (the "Hospital") is a Massachusetts corporation with its principal place of business in Massachusetts. *See id*. Count IV ¶ 2. However, as discussed below, the Hospital has been fraudulently joined in this case, so its citizenship must be disregarded for purposes of determining this Court's diversity jurisdiction.

9.     The "linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 4-5 (D. Mass. 2001). A defendant has been fraudulently joined, where either "there has been an outright fraud committed in the plaintiff's pleadings or . . . there is no reasonable basis in law and fact for the plaintiff's claim against the putative fraudulently joined defendant." *In re Mass. Diet Drug Litig.,* 338 F. Supp. 2d 198, 202 (D. Mass. 2004). A "mere theoretical possibility of recovery" is insufficient to defeat a finding of fraudulent joinder. *Mills*, 178 F. Supp. 2d at 4.

10.    In this case, Plaintiffs' claims against the Hospital fail the second prong of the fraudulent joinder test because "there is no reasonable basis in law and fact" to support any of the claims asserted against the Hospital. *Mills*, 178 F. Supp. 2d at 4. Plaintiffs assert the very same claims against the Hospital (negligence, breach of warranty, loss of consortium, and violation of Chapter 93A) as they assert against Medtronic. However, Plaintiffs specifically disclaim any assertion of liability against the Hospital for anything other than "distributing and

3

selling the devices and opioids specified herein through its pharmacy, medical device supply system, or otherwise." *See id*. Count IV, ¶ 9. Indeed, the Complaint makes clear that Plaintiffs do **not** intend to assert a claim for medical malpractice against the Hospital. *See id.* Count IV, ¶ 10. Moreover, Plaintiffs specifically deny that "any member of the hospital's medical staff had a duty to provide warnings or instructions to the plaintiffs beyond those that were included with the products." *See id*.

11.     What remains in the Complaint are the barest of factual allegations against the Hospital, in which Plaintiffs admit the Hospital and its employees owed no duty to provide any warnings beyond those on the device's labels, and do not allege the Hospital undertook any independent act or omission constituting a breach of warranty. *See id.* Count IV, ¶¶ 11.

12.     Having disclaimed that the Hospital owed Plaintiffs **any** duty, Plaintiffs' Complaint is devoid of any basis to support a negligence claim against the Hospital. In addition, merely alleging in conclusory terms that the allegedly defective Subject Pump was supplied by the Hospital, without more, cannot form the basis of a viable claim against the Hospital upon which relief may be granted. "A finding of fraudulent joinder bears an implicit finding that plaintiff has failed to state a cause of action against the fraudulently joined defendant." *Polyplastics, Inc.v . Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983).

13.     Indeed, federal courts have repeatedly held in medical device products liability cases that a non-diverse hospital is fraudulently joined where the sole factual allegations against the hospital are, as in this case, that it sold or distributed the device at issue. *See, e.g., Roell v. Stryker*, 3:06-cv-443, 2007 WL 2783357, * 4 (S.D. Miss. Sept. 24, 2007) (concluding that hospital could not be liable as "seller" of artificial hip under state product liability law and surveying law of other jurisdictions reaching similar conclusions under U.C.C.); *Kavalir v.*

*Medtronic, Inc.*, No. 07-0835, 2007 WL 1225358, *3 (N.D. Ill. April 19, 2007) (holding hospital was fraudulently joined "because there is no possibility that Plaintiff could state a cause of action for breach of implied warranty against the Hospital Defendants" based on the general rule that hospitals are not sellers of medical devices); *Pleasant v. Dow Corning Corp.*, No. 92-3180-17, 1993 WL 1156110, *3 (D.S.C. Jan. 7. 1993) (explaining that courts nationwide have "refused to extend [strict liability] to hospitals that provide products, such as medical devices, in the course of treating a patient," and thus finding hospital to be a "sham defendant" fraudulently joined to defeat diversity) (internal citations omitted); *see also Walker v. Medtronic, Inc.*, No. 03-CV-74, 2003 WL 21517997, *3 (N.D. Miss. Jun. 4, 2003) (finding non-diverse sales representative was fraudulently joined where complaint was "without a factual basis for concluding that [representative] directly, personally, or actively participated in any alleged tortious conduct").

14.     Because there is no reasonable basis in law or fact for the Plaintiffs' claims of negligence and breach of warranty, there can be no basis for the claims of loss of consortium and unfair trade practices under Chapter 93A, which are based entirely on the negligence and breach of warranty theories. *See* Counts V and VI.

15.     In this case, Plaintiffs' Complaint fits squarely within the line of cases cited above, and therefore the same conclusion—that the non-diverse Hospital defendant was fraudulently joined—is required here. The sole factual allegation as to the Hospital is that it supplied the Subject Pump and the drugs utilized therein that were implanted into Plaintiff Cynthia Phillips at the Hospital. *See id.* at Count VI, ¶¶10-11. Nowhere in the Complaint is there any factual allegation that the Hospital or its employees or agents committed medical malpractice, were negligent, or took any independent action that proximately caused injury or damages to Plaintiffs. *See id.*

16.     Since "there is no reasonable basis in law and fact for the [Plaintiffs'] claim[s]" against the Hospital, the Hospital has been fraudulently joined.  Removal is therefore appropriate, and this Court should dismiss those claims against the Hospital.  *See Polyplastics, Inc. v . Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983); *Walker*, 2003 WL 21517997 at *4 (dismissing claims against non-diverse, fraudulently joined sales representative because "the standards to be applied for a fraudulent joinder claim and for dismissal for failure to state a claim are virtually identical").

17.     Disregarding the citizenship of the Hospital due to fraudulent joinder, there is complete diversity in this case because both Plaintiffs are Massachusetts citizens and Medtronic is a citizen of Minnesota.  *See* 28 U.S.C. § 1332.

18.     This action also satisfies the amount-in-controversy requirement.  *See* 28 U.S.C. § 1332.  Plaintiffs allege that as a result of her use of the drug infusion pump, Ms. Phillips "was caused to sustain severe and permanent injuries including a substantial exacerbation of her disability . . . has had extensive medical care . . . [and] is totally and permanently disabled."  *See* Compl., Count I, ¶13.  Moreover, in Plaintiffs' Chapter 93A demand letter to Medtronic, Plaintiffs alleged "reasonable relief to consist of" $17.5 Million.  *See* Compl., Ex. A.  Although Medtronic denies any liability, let alone liability even approaching that order of magnitude, it is evident from the face of the Complaint that the amount in controversy exceeds $75,000, excluding interest and costs.  *See Radlo v. Rhone-Poulenc, S.A.*, 241 F. Supp. 2d 61 (D. Mass. 2002) (removing defendant can satisfy amount in controversy requirement "by a preponderance of the evidence").

19.     The consent to removal of The Brigham and Women's Hospital is not required. *See, e.g., Polyplastics, Inc. v. Transconex*, 713 F.2d at 877 (party who was fraudulently joined

"need not join in a removal petition"); *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815 (5th Cir. 1993) (requiring consent to removal "by improperly or fraudulently joined parties would be nonsensical"); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 431 F. Supp. 2d at 117 ("when a plaintiff fraudulently joins a defendant to destroy removability, a federal court may ignore the lack of consent from that defendant and permit removal of the case.") Nevertheless, Medtronic has contacted counsel for the Hospital and counsel has consented to the removal of this action on these grounds.

## Federal Question Jurisdiction

20.     In addition to diversity jurisdiction, this Court also has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 316 (2005).

21.     In *Grable*, the Court held federal question jurisdiction does not require a plaintiff to have asserted a federal cause of action, and that a case asserting only state law causes of action may be removed to federal court if it satisfies the above-quoted test. *See id*. at 316-20.

22.     Federal issues are actually in dispute in this lawsuit, the federal issues are substantial, and the exercise of jurisdiction by this Court is consistent with congressional judgment about the sound division of labor between the state and federal courts. *See Grable*, 545 U.S. 308 (2005) (affirming removal based on federal question jurisdiction even though Congress did not provide private right of action in statute giving rise to substantial federal question); *see also In re Pharmaceutical Industry Average Wholesale Price Litig.*, 457 F. Supp. 2d 77 (D. Mass. 2006) (applying *Grable*'s three part test to determine case presented sufficient dispute on

an issue of federal law as to retain federal court jurisdiction even absent an asserted federal cause

of action).

23.    The Complaint in this case raises substantial, disputed federal questions.

Plaintiffs have pled strict liability claims premised on an alleged product defect in the Subject

Pump, which is and has been at all relevant times a Class III medical device approved by the

United States Food and Drug Administration ("FDA") through the PreMarket Approval process.

The Supreme Court has recently and unequivocally held such state law tort claims regarding

such FDA-approved devices are expressly preempted by the 1976 Medical Device Amendments.

*See Riegel v. Medtronic, Inc.*, 552 U.S. __, 128 S. Ct. 999 (2008).    The Premarket

Approval process is a "rigorous regime" reserved for state of the art medical devices, in

which the manufacturer must "submit a detailed PMA application that contains full reports of all

investigations of the safety and effectiveness of the device; a full statement of the components,

ingredients, properties, and principles of operation of the device; a full description of the

methods used in the manufacture and processing of the device; information about performance

standards of the device; samples of the device; specimens of the proposed labeling of the device;

and any other relevant information." *Riegel v. Medtronic*, 451 F.3d 104, 109 (2d Cir. 2006)

(citing 21 U.S.C. § 360e(c)), *aff'd*, 128 S.Ct. 999 (2008).    The FDA closely scrutinizes PMA

applications, "weigh[ing] any probable benefit to health from the use of the device against any

probable risk of injury or illness from such use.'" *Riegel,* 128 S. Ct. at 1004 (quoting 21 U.S.C.

§360c(a)(2)(C)).    FDA may also request additional information or require revisions to the

device's design, manufacturing methods, or labeling prior to approval.  *See id.* (citing 21 U.S.C.

§ 360e(c)(1)(G), 21 C.F.R. § 814.44(e)).

24.     This lawsuit, therefore presents a disputed and substantial federal question of whether, under *Riegel*, Plaintiffs may pursue the claims alleged in the Complaint, because such claims are premised on an allegation of product defect in a device subjected to and expressly approved through the FDA's Premarket Approval process.

25.     For the reasons set forth above, a substantial federal question is likely to arise in this litigation, and thus this Court has federal question jurisdiction in this case.   Therefore, removal is proper on that basis, without regard to the citizenship of any defendant.   *See* 28 U.S.C. § 1441.

### Additional Requirements to Removal

26.     Venue is proper in this Court because the action is being removed from the Superior Court of Suffolk County, Massachusetts, which lies within the United States District Court for District of Massachusetts.   *See* 28 U.S.C. §§ 1441(a) and 1446(a).

27.     Pursuant to 28 U.S.C. § 1446(d), Medtronic will promptly file with the Clerk of the Suffolk Superior Court and serve on all parties a true and correct copy of this Notice of Removal.

28.     Pursuant to Local Rule 81.1(a), Medtronic will request from the clerk of the Suffolk Superior Court certified or attested copies of all records and proceedings in the state court, and certified or attested copies of all docket entries therein, including a copy of this Notice of Removal, and shall file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

29.     By filing this Notice of Removal, Medtronic does not waive any jurisdictional objection or other defense that is or may be available to it.

WHEREFORE, Medtronic respectfully removes the case pending in the Suffolk Superior

Court to this Court.

Dated:  February 22, 2010

Respectfully Submitted,

MEDTRONIC, INC.

By its attorneys,

/s/ Eric M. Gold
Eric M. Gold, BBO #660393
GREENBERG TRAURIG, LLP
One International Place
Boston, Massachusetts 02110
Tel: (617) 310-6000
Fax: (617) 310-6001
Email: GoldE@gtlaw.com

Of Counsel:

Lori G. Cohen
Sara K. Thompson, BBO # 648258
GREENBERG TRAURIG, LLP
3290 Northside Parkway, Suite 400
Atlanta, Georgia 30327
Tel:  (678) 553-2100
Fax:  (678) 553-2212
Email: CohenL@gtlaw.com
Email: ThompsonS@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants on February 22, 2010.

/s/ Eric M. Gold