```
                    United States District Court
                      District of Massachusetts
_____
                              )
CYNTHIA PHILLIPS and CLIFTON   )
PHILLIPS,                     )
        Plaintiffs,           )
                              )   Civil Action No.
        v.                    )   10-10305-NMG
                              )
MEDTRONIC, INC. and THE BRIGHAM)
AND WOMEN'S HOSPITAL, INC.,   )
        Defendants.           )
_____)
```

## MEMORANDUM & ORDER

GORTON, J.

Plaintiffs Cynthia Phillips ("Cynthia") and Clifton Phillips ("Clifton") (collectively "the Plaintiffs") bring a product liability suit against Medtronic, Inc. ("Medtronic") and The Brigham and Women's Hospital ("The Brigham") (collectively "the Defendants") for negligence, breach of express and implied warranties and unfair and deceptive practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A"). Before the Court are motions to dismiss brought by Medtronic and The Brigham and a motion to remand the action to state court brought by the Plaintiffs.

### I. Factual Background

The following facts are as alleged in the Plaintiffs' complaint.

Medtronic designs, develops, assembles, manufactures,

packages, markets and sells intrathecal pain pumps.  The devices at issue in this case are the Medtronic SynchroMed® II Programmable Drug Infusion Pump Model 8637-40 ("the SynchroMed Pump") and its associated devices including but not limited to the Medtronic Indura® 1P Intrathecal Catheter Model 8709SC ("the Indura Catheter") (collectively "Medtronic's Devices").  Pursuant to the Medical Device Amendments ("MDA") to the Food, Drug, and Cosmetic Act ("FDCA"), the Food and Drug Administration ("FDA") issued pre-market approval ("PMA") for Medtronic's Devices.

In 2002, Cynthia had a Medtronic intrathecal pain pump inserted.  In July, 2004, the pump was replaced with a SynchroMed Pump and Indura Catheter.  Both procedures were performed at The Brigham.  Through late 2005, the SynchroMed Pump was filled with medication supplied by The Brigham using devices manufactured or approved by Medtronic and supplied and sold by The Brigham.

In late December, 2005 and early January, 2006, Cynthia had surgeries at The Brigham due to increased pain and loss of unexplained "function".  Cynthia's physician determined that the cause of her increased pain and loss of function was the formation of granulomas, or inflammatory masses, at or near the tip of the Indura Catheter.

In January, 2008, Medtronic sent a letter to clinicians worldwide informing them of an increase in reported cases of inflammatory masses associated with its implantable infusion

systems, including the SynchroMed Pump. In March, 2008, the FDA classified the letter as a Class I Recall ("the Recall"). Cynthia alleges that she did not learn of the Recall until 2009.

The Plaintiffs claim that Medtronic was negligent in designing its Devices and that both of the Defendants were negligent in failing to warn consumers about the possibility of granuloma formation at the Indura Catheter's tip, the propensity of certain medications, such as opioids, to form such granulomas and the appropriate dosage of medications to be used with Medtronic's Devices. The Plaintiffs also allege that the Defendants breached express and implied warranties that the devices were safe, merchantable and fit for their intended purposes by marketing products with defective designs and failing to warn of known hazards. The Plaintiffs further contend that, due to the design defects, Medtronic did not conform to the design specifications that were approved by the FDA. Cynthia seeks damages for "severe and permanent injuries including a substantial exacerbation of her disability." She alleges that she is permanently confined to a wheelchair and requires full-time care. Clifton, Cynthia's husband, seeks damages for loss of consortium.

The Plaintiffs also seek damages for violations of Chapter 93A, claiming that the Defendants engaged in unfair and deceptive practices. On October 22, 2009, the Plaintiffs sent the

Defendants a written demand for relief, asking for $15 million for Cynthia and $2.5 million for Clifton. The Defendants demurred. The Plaintiffs allege that they are entitled to treble damages and attorneys' fees because the Defendants' refusal to settle was made in bad faith.

**II. <u>Procedural History</u>**

The Plaintiffs filed their complaint in the Massachusetts Superior Court Department for Suffolk County on December 14, 2009. On February 22, 2010, the case was removed to federal court based upon the Defendants' claim of 1) diversity of citizenship pursuant to 28 U.S.C. § 1332 and 2) federal question jurisdiction pursuant to 28 U.S.C. § 1331. On March 1st and 8th of 2010, the Defendants moved to dismiss the case. On March 22, 2010, the Plaintiffs moved to remand the action to state court.

Medtronic requested oral argument on its motions but the Court determined that such a hearing was unnecessary.

**III. <u>Motion to Remand to State Court</u>**

The Plaintiffs move to remand this case to state court, maintaining that this Court lacks subject matter jurisdiction over the case because there is not complete diversity of citizenship between the parties and the case does not involve any federal question.

**A. Diversity Jurisdiction: Fraudulent Joinder**

**1. Standard**

A non-resident defendant may remove a civil case from state court to a United States District Court if the case presents a controversy between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332, 1441(b). To determine whether complete diversity exists, the Court must examine the circumstances as of the time of the petition for removal. Carey v. Bd. of Governors of Kernwood Country Club, 337 F. Supp. 2d 339, 341 (D. Mass. 2004). If the Court determines that complete diversity does not exist, the case must be remanded. See 28 U.S.C. § 1447(c) ("[i]f at any time prior to final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); Carey, 337 F. Supp. 2d at 341.

The plaintiff may not defeat the right of removal by fraudulently joining a non-diverse defendant "having no real connection with the controversy." Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). A joinder is considered fraudulent if it is "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against [the defendants]." Wilson, 257 U.S. at 98. A finding of fraudulent joinder "bears an implicit finding that the plaintiff

has failed to state a cause of action against the fraudulently joined defendant[s]." Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983); see also Couglin v. Nationwide Mut. Ins. Co., 776 F. Supp. 626, 628 (D. Mass. 1991).

The party seeking removal bears the burden of showing, by clear and convincing evidence, that the non-diverse defendant was fraudulently joined. Simons v. Hitachi Am., Ltd., No. 06-11895, 2007 WL 1306558, at *3 (D. Mass. May 3, 2007). In deciding whether there is a "reasonable basis in law and fact" for the claim, the Court must resolve "all disputed questions of fact and any ambiguities in the current controlling substantive law in plaintiffs' favor". Badon v. RJR Nabisco Inc., 236 F.3d 282, 286 (5th Cir. 2000). In considering whether a party has been fraudulently joined, a court is not held captive by the allegations in the complaint. Mills, 178 F. Supp. 2d at 5. A court may consider additional evidence beyond the claims made in the pleadings, including affidavits of the parties. Id. at 6 (citing Badon, 236 F.3d at 285 n. 3 (holding that a court may consider "undisputed summary judgment type evidence" when determining whether a reasonable possibility of recovery under state law exists)).

**2. Application**

This case was removed to federal court on the theory that The Brigham was fraudulently joined to defeat diversity. The

Plaintiffs are residents of Massachusetts.  Medtronic is a foreign corporation with its principal place of business in Minnesota.  The Brigham is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.  Thus, in the absence of The Brigham, there would be complete diversity and this Court would have subject matter jurisdiction over the Plaintiffs' claims.  The question for the Court is, therefore, whether the Plaintiffs' claims against The Brigham have a "reasonable basis in law and fact."  Badon, 236 F.3d at 286.

        **a.    Claim Against The Brigham for Breach of Warranty**

In Massachusetts, there is no strict liability cause of action for a defective product.  Commonwealth v. Johnson Insulation, 682 N.E.2d 1323, 1326 (Mass. 1997).  Such a claim must be brought as a claim for breach of the implied warranties of merchantability and/or fitness for a particular purpose under Mass. Gen. Laws ch. 106, §§ 2-314 and 2-315, or of an express warranty under § 2-313.  Id.  Such claims must arise out of "transactions in goods" and not the provision of services.  Mass. Gen. Laws ch. 106, § 2-102.  The breach of warranty theory is not available where "the predominant factor, thrust, or purpose" of the transaction is the "rendition of service, with goods incidentally involved."  Mattoon v. City of Pittsfield, 775 N.E. 2d 770, 784 (Mass. App. Ct. 2002).  Additionally, a breach of warranty claim can only be brought against a "seller" of goods.

Mass. Gen. Laws ch. 106, §§ 2-213, 2-314, 2-315.

The dispositive issue before the Court is whether a hospital may be liable for breach of warranty for supplying a medical device to a patient as part of his or her treatment. The Court has discovered no Massachusetts case law that resolves that question. When a federal court is applying state substantive law in a diversity action and the state courts have not addressed an issue, the federal court must predict how the state's highest court would resolve the issue by "relying on guidance from analogous decisions in other states and other legal authorities." Stratford Sch. Dist., S.A.U. Dist. No. 58 v. Emp'rs Reins. Corp., 162 F.3d 718, 720 (1st Cir. 1998).

There is a split of authority in other jurisdictions as to whether a hospital can be liable for breach of warranty when it supplies a defective medical device to a patient in the course of providing medical services and treatment. 35 Mass. Practice § 6:14 (2d ed. 2009).

A number of federal courts have held that a hospital cannot be subject to strict liability because it is not a seller or distributor of medical devices. See, e.g., Vergott v. Deseret Pharm. Co., 463 F.2d 12, 16 n.5 (5th Cir. 1972) (holding that a hospital cannot be strictly liable under Texas law for a defective catheter because a hospital is "not a seller engaged in the business of selling the product."); Roell v. Stryker, No.

3:06-cv-443, 2007 WL 2783357, at *4 (S.D. Miss. Sept. 24, 2007) (holding that the hospital was fraudulently joined because it did not meet the definition of "seller" as defined by Mississippi's product liability statute or under the Uniform Commercial Code); Kavalir v. Medtronic, Inc., No. 07-0835, 2007 WL 1225358, at *3 (N.D. Ill. Apr. 19, 2007) (holding that the hospital was fraudulently joined because hospitals are not sellers of medical devices and, therefore, there was no basis in Illinois law to support the plaintiff's claims for strict liability and breach of implied warranty against the hospital); Pleasant v. Dow Corning Corp., No. 3:92-3180-7, 1993 WL 1156110, at *3 (D.S.C. Jan. 7, 1993) (citing numerous state and federal decisions to support its holding that "because hospitals are primarily engaged in the business of providing medical services, rather than selling products, strict liability should not be imposed if the medical services involve the use of a product.").

A few state courts have, however, held that a hospital or physician can be deemed a seller or distributor of medical devices for the purposes of a breach of warranty claim. See, e.g., Mauran v. Mary Fletcher Hosp., 318 F. Supp. 297, 300 (D. Vt. 1970) (predicting that a hospital could be liable for breach of warranty for selling a defective drug); Palmer v. A.H. Robins Co., Inc., 684 P.2d 187, 207 (Colo. 1984) (holding that the physician who included the cost of an intrauterine contraceptive

device in the fee for his insertion of the device was a "seller" under the Uniform Commercial Code); Skeleton v. Druid City Hosp. Bd., 459 So.2d 818 (Ala. 1984) (finding that a hospital can be liable as a seller of goods for breach of implied warranty of fitness for a particular purpose for using a defective suturing needle during surgery).  This case law indicates that there may be a reasonable basis in law for the Plaintiffs' breach of warranty claims against The Brigham.

The Plaintiffs argue that a hospital may have some duty to warn patients of defects in a medical device or drug by pointing to Massachusetts cases in which the courts held that a pharmacy has a duty to warn customers about side effects in certain circumstances.  Cottram v. CVS Pharmacy, 764 N.E. 2d 814, 823 (Mass. 2002) (holding that a pharmacy has a duty to provide a complete list of side effects when they provide a list that a customer would reasonably interpret as complete); Brienze v. Casserly, No. 01-1655-C, 2003 WL 23018810 (Mass. Super. Dec. 19, 2003) (holding that a pharmacist has a duty to warn when he or she knows of a risk to that particular customer).

Considering the pharmacy cases cited by the Plaintiffs and the fact that there is no definitive Massachusetts case law on this question, it is plausible that the Massachusetts Supreme Judicial Court ("SJC") would follow the few state courts which have held that a hospital can be deemed a seller or distributor

of medical devices for the purposes of a product liability claim. Resolving all ambiguities in the law in favor of the Plaintiffs, the Court infers that the Massachusetts state courts would do so. The Defendants bear a heavy burden of proving fraudulent joinder and they have cited no Massachusetts case law in their favor. See Simons, 2007 WL 1306558, at *3.

In other similar cases, courts have refused to find fraudulent joinder. See Badon, 236 F.3d at 286-87; In re Fosamax Prods. Liab. Litig., MDL No. 1789, 2008 WL 2940560, at *6-8 (S.D.N.Y. July 29, 2008); Snyder v. Davol, Inc., No. CV 07-1081-ST, 2008 WL 113902, at *1 (D. Or. Jan. 7, 2008) (holding that a hospital had not been fraudulently joined because there was no definitive ruling from any Oregon appellate court foreclosing a strict liability claim against a hospital). Even where a court is inclined to infer that the state court would deny such a basis for liability, a party is not fraudulently joined if there is "at least an arguably reasonable basis for predicting" that the state court would allow such a claim for liability. Badon, 236 F.3d at 286-87; Lociero v. Sanofi-Aventis U.S. Inc., No. 08-CV-4895, 2009 WL 2016068, at *4, 8 (W.D.N.Y. July 10, 2009) ("[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder"); Snyder, 2008 WL 113902, at *7 (finding no fraudulent joinder even though the "clear weight of authority from other jurisdictions" weighed in the defendants' favor).

For that reason, the Court finds that the Plaintiffs have stated a reasonable basis in law and fact to support their claims against The Brigham for breach of warranty. Consequently, The Brigham was not fraudulently joined, the parties are not completely diverse and the case will be remanded to state court for lack of diversity jurisdiction.

### b. Claims Against The Brigham for Negligence, Violation of Chapter 93A and Loss of Consortium

Because there is a reasonable basis in fact or law for the breach of warranty claim against The Brigham, the Court need not address whether a reasonable basis in fact or law exists for the remaining claims against The Brigham.

### B. Federal Question Jurisdiction

This case was also removed on the theory that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

#### 1. Standard

To establish federal question jurisdiction, at least one of the Plaintiffs' claims must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). It must appear from the face of the complaint that the "right to relief depends upon the construction or application

of federal law." Id. at 313.

### 2. Application

None of the Plaintiffs' state-law claims on their face arises under or turns on the construction or application of federal law. See id. at 312. Medtronic argues that the Plaintiffs' claims are preempted by the MDA and that this preemption defense raises issues of federal law sufficient to confer federal question jurisdiction.

Indeed, the MDA contain an express preemption clause which specifies that no state may establish or enforce any requirement which "relates to the safety or effectiveness of the device" or to any other requirement applicable to the device under the MDA. 21 U.S.C. § 360k(a). More generally, the FDCA specifies that it does not provide for a private right of action and all actions to enforce it "shall be by and in the name of the United States." 21 U.S.C. § 337(a). Thus, the Plaintiffs' claims may very well be preempted by the FDCA.

Nevertheless, where a complaint on its face raises only state-law claims, the defense of preemption does not support removal unless there is "complete preemption". Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 45 (1st Cir. 2008). Complete preemption exists when there is 1) "exclusive federal regulation of the subject matter of the asserted state claim" and 2) a federal cause of action addressing wrongs of the same type. Id.

at 46 (internal citations omitted). The rationale for the exception is that there are certain matters for which

> Congress so strongly intended [for there to be] an exclusive federal cause of action that what a plaintiff calls a state-law claim is to be *recharacterized* as a federal claim.

Id. at 45. The United States Supreme Court has described complete preemption as a "narrow exception" to the general rule that an anticipated federal defense cannot support removal to federal court. Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 5 (2003).

The Court finds that the instant action does not satisfy the second criteria for complete preemption because the FDCA expressly states that it does not provide a private federal cause of action. 21 U.S.C § 337(a); see, e.g., Fayard, 533 F.3d at 48 (holding that there was not complete preemption because the applicable federal statute did not provide a private right of action to redress the same kind of injury alleged in the plaintiff's state-law claims); Asahi Kasei Pharma Corp. v. Actelion Ltd., No. C 09-405 SI, 2009 WL 801555, at *5 (N.D. Cal. Mar. 25, 2009) (remanding plaintiff's claims to state court after finding that, because the FDCA does not provide a private right of action, it does not completely preempt state law). Because the Plaintiffs' claims do not arise under federal law and the complete preemption exception does not apply, the present action

will be remanded for lack of federal question jurisdiction.

Given that this Court has neither diversity nor federal question jurisdiction over this case, the Plaintiffs' motion to remand will be allowed and the Defendants' motions to dismiss will be denied as moot.

**ORDER**

In accordance with the foregoing,

1) Plaintiffs' motion to remand to state court (Docket No. 15) is **ALLOWED;** and

2) Defendants' motions to dismiss (Docket Nos. 7 and 11) are **DENIED** as moot.

**So ordered.**

/s/ Nathaniel M. Gorton<br>
Nathaniel M. Gorton<br>
United States District Judge

Dated December 1, 2010